**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SONIA PAGAN,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 09-00002** |
| | : | **(consolidated)** |
| **AARON OGDEN, BARRY JOZWIAK,** | : | |
| **AND COUNTY OF BERKS,** | : | |
| **Defendants** | : | |

**OPINION**

**Stengel, J.**                                                                 **July 30, 2010**

On January 2, 2007, Sheriff Deputy Aaron Ogden and Sheriff Deputy Thomas

Trotter attempted to arrest Jorge Luis Santini.  While Mr. Santini was attempting to evade

arrest, he hit Deputy Ogden with his car and Deputy Ogden landed on the hood of Mr.

Santini's car.  Mr. Santini refused to stop the car and Deputy Ogden fired his gun, killing

Mr. Santini.  Mr. Santini's fourteen-year-old nephew and two-year-old son were in the car

at the time.

County of Berks, former Sheriff Barry Jozwiak, and Deputy Ogden filed a motion

for summary judgment.  I will grant the motion in part and deny it in part.


I.        BACKGROUND

On January 2, 2007, Sheriff Deputy Aaron Ogden and Sheriff Deputy Thomas

Trotter were charged with executing two warrants that had been issued against Jorge Luis

Santini.[1]  Mr. Santini was on probation and parole for a conviction involving the possession of firearms without a license.  See Statement of Undisputed Facts at ¶ 6; Plaintiff's Response to Undisputed Facts at ¶ 6.  In November, 2006, new charges were filed against him for terroristic threats, recklessly endangering another person, and disorderly conduct.  Id. at ¶ 7.  An arrest warrant was issued for the new charges.  Id.  On November 15, 2006, the Common Pleas Court issued a bench warrant.  Id. at ¶ 8.

On January 2, 2007, Deputy Ogden received a telephone call from a confidential informant stating she was Mr. Santini's former girlfriend.  See Statement of Undisputed Facts at ¶ 14; Plaintiff's Response to Undisputed Facts at ¶ 14.  The former girlfriend advised that Mr. Santini was staying at 1142 Franklin Street, Reading, Pennsylvania and drove a green Ford vehicle.  Id. at ¶ 15.  The former girlfriend told Deputy Ogden that Mr. Santini may be carrying a gun.  Id. at ¶ 16.

On January 2, 2007, Deputy Ogden and Deputy Trotter intended to arrest Mr. Santini on the bench warrant and arrest warrant.  Id. at ¶ 17.  They informed Sheriff Deputy Frederick Smith and Sheriff Deputy Michael Perotto, the other team from the sheriffs' office on duty that day, that they would need back up.  Id. at ¶¶ 18, 20.  The deputies' clothing was marked in lettering that identified them as law enforcement

---

[1]  Statement of Undisputed Facts at ¶ 12-13, Pagan v. Ogden, No. 09-00002 (E.D. Pa. filed Jan. 18, 2010); Plaintiff's Statement of Additional Material Facts and Answer to Defendants' Statement of Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment at ¶ 12-13, Pagan v. Ogden, No. 09-00002 (E.D. Pa. filed Feb. 1, 2010) [hereinafter Plaintiff's Response to Undisputed Facts].

2

personnel.  <u>Id.</u> at ¶ 19.

Deputy Ogden and Deputy Trotter went to the 1100 block of Franklin Street, where they observed a vehicle matching the description provided by Mr. Santini's former girlfriend.  <u>See</u> Statement of Undisputed Facts at ¶ 24; Plaintiff's Response to Undisputed Facts at ¶ 24.  The deputies parked on the 1100 block of Franklin Street and observed the house located at 1142 Franklin Street.  <u>Id.</u> at ¶ 25.  A male exited 1142 Franklin Street, smoked a cigarette, and went back inside.  <u>Id.</u> at ¶ 26.  Two males and a child then exited the residence and crossed the street, walking toward the suspect vehicle.  In a report prepared following the incident, Deputy Trotter stated "he saw Santini exit the house along with another male and a child."  <u>See</u> Plaintiff's Response at Ex. B at Ex. 2.  At his deposition, however, Deputy Trotter stated he did not see the child when the three exited the home.  <u>See</u> Plaintiff's Response at Exh. B at 12:18-24.  He and Deputy Ogden now claim they did not know a child was present until after Deputy Ogden shot Mr. Santini.

The deputies drove down the street.  <u>See</u> Statement of Undisputed Facts at ¶ 32; Plaintiff's Response to Undisputed Facts at ¶ 32.  After passing the vehicle, the deputies pulled over and approached the vehicle on foot.  <u>Id.</u>  Deputy Trotter approached the driver's side, and Deputy Ogden approached the passenger's side, positioning himself off of the passenger front side of Mr. Santini's vehicle and behind the vehicle parked in front of Mr. Santini's.  <u>Id.</u> at ¶ 35, 38.  In his statement following the incident, Deputy Trotter stated "he positively identified Santini using binoculars and a J-net photo ID."  <u>See</u>

3

Plaintiff's Response at Exh. B at Exh. 2. At his deposition, however, Deputy Trotter stated he did not identify Mr. Santini until after Mr. Santini entered the vehicle and the deputies approached. See Plaintiff's Response at Exh. B at 21:8-13.

As the deputies approached the vehicle, Mr. Santini looked at Deputy Trotter, locked the door, and accelerated the vehicle directly at Deputy Ogden. See Statement of Undisputed Facts at ¶ 41; Plaintiff's Response to Undisputed Facts at ¶ 41. Deputy Ogden landed on the hood of Mr. Santini's car. Id. at ¶ 44. Deputy Ogden held onto the windshield wiper blade as Mr. Santini drove the vehicle up Franklin Street toward Perkiomen Avenue. Id. at ¶45. Deputy Ogden believed Mr. Santini was going to continue driving and that he would fall from the vehicle. Id. at ¶ 50. Deputy Ogden, fearing for his life, screamed three times for Mr. Santini to stop the vehicle. Id. at ¶ 47. Mr. Santini did not stop the vehicle. Id. at ¶ 48. Deputy Ogden fired his gun one time through the windshield, striking and killing Mr. Santini. Id. at ¶ 51.

The vehicle continued for another one-half block, and stopped on the sidewalk. Deputies Trotter, Smith, and Perotto approached the vehicle. See Statement of Undisputed Facts at ¶ 53; Plaintiff's Response to Undisputed Facts at ¶ 53. Deputy Trotter and a Reading Police Officer removed Mr. Santini from the vehicle and Deputy Trotter started CPR. Id. at 54. Deputy Perotto and Deputy Smith removed the front passenger seat, id. at ¶ 55, and Reading Police Officers removed Justice Santini, Mr. Santini's two-year-old son, from the back seat, id. at ¶ 58. Shamir Rodriguez, the

fourteen-year-old front-seat passenger, was taken to the Reading Police Department. Id. at ¶ 59. After his mother arrived, he was interviewed. Id. at ¶¶ 60-61. The City of Reading Police Department conducted an investigation into the incident and found Deputy Ogden's use of force was justified. Id. at ¶ 65.

Sonia Pagan, administratrix of the estate of Jorge Luis Santini, initiated an action in the Berks County Court of Common Pleas, and filed a complaint on January 12, 2008. Ms. Pagan commenced a second action in the United States District Court for the Eastern District of Pennsylvania on January 2, 2009. This action was docketed at 09-00002. On February 2, 2009, the state court action was removed to the Eastern District of Pennsylvania and docketed at 09-00445. The actions were consolidated on March 12, 2009. On September 15, 2009, Jasmine Cambrelen filed an action in the Eastern District of Pennsylvania on behalf of her son, Justice Santini. This action was docketed at 09-4177. On October 20, 2009, the actions were consolidated.

Ms. Pagan alleged a Fourth Amendment claim and a Fourteenth Amendment claim against Deputy Ogden, Fourteenth Amendment claims against former Sheriff Barry Jozwiak and the County of Berks, a negligence claim against Deputy Ogden, a reckless disregard claim against Deputy Ogden, a wrongful death claim and survival action against Deputy Ogden, and wrongful death claims and survival actions against former Sheriff Jozwiak and the County of Berks.

Ms. Cambrelen alleged a Fourth Amendment claim and a Fourteenth Amendment

claim against Deputy Ogden, Fourteenth Amendment claims against Sheriff Jozwiak and the County of Berks, an assault claim against Deputy Ogden, a reckless disregard claim against Deputy Ogden, a battery claim against Deputy Ogden, and an intentional infliction of emotional distress claim against Deputy Ogden.

II.    STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it could affect the outcome of the case under the governing law. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its

initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

III.    <u>DISCUSSION</u>

    A.    <u>Fourth Amendment Claim</u>

        1.    <u>Excessive Force Against Mr. Santini</u>

Ms. Pagan alleges a Fourth Amendment claim on behalf of the estate of Jorge Luis Santini.  The Fourth Amendment is applied to the states through the Fourteenth Amendment.  <u>See</u> <u>O'Connor v. Ortega</u>, 480 U.S. 709, 714 (1987).  To state a Fourth Amendment excessive force claim, the plaintiff must establish "a 'seizure' occurred and that it was unreasonable."  <u>Kopec v. Tate,</u> 361 F.3d 772, 776 (3d Cir. 2004) (citing <u>Estate of Smith v. Marasco,</u> 318 F.3d 497, 515 (3d Cir. 2003)).  Defendants do not contest a seizure occurred; they maintain the seizure was reasonable.

"The test for reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'"  <u>Kopec</u>, 361 F.3d at 776 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)).  The following are among the factors considered to determine reasonableness:

> The severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he actively is resisting arrest or attempting to evade arrest by flight[,] . . . the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

<u>See id.</u> at 777 (internal citations omitted).

Reasonableness frequently should remain a jury question. Kopec, 361 F.3d at 777 (citing Abraham v Raso, 183 F.3d 279, 290 (3d Cir. 1999)). Summary judgment should be granted only if a court concludes, "after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Id. (quoting Abraham, 183 F.3d at 290).

A genuine issue of material fact remains concerning whether Deputy Ogden's use of force was reasonable under the circumstances. Mr. Santini drove away while attempting to evade arrest. Deputy Ogden was on the hood of Mr. Santini's car and feared for his life. However, shooting Mr. Santini, the driver, may not have decreased Deputy Ogden's risk of injury. In addition, Deputy Ogden fired a gun into a vehicle that contained two minors[2] and may have identified Mr. Santini prior to Mr. Santini entering the vehicle.[3]

Considering the totality of the circumstances, I will deny defendant's motion for summary judgment for the claim alleging Deputy Ogden used excessive force against Mr. Santini.

---

[2] Although Deputy Ogden and Deputy Trotter claim they were not aware Justice Santini was in the vehicle, a report from Deputy Trotter prepared immediately following the incident stated he saw Mr. Santini exit the house with another male and a child.

[3] Although Deputy Ogden and Deputy Trotter now claim they did not identify Mr. Santini until the deputies approached the vehicle, in a report prepared immediately following the incident Deputy Trotter stated he positively identified Mr. Santini with binoculars and a J-net photograph.

2.    <u>Excessive Force Against Justice Santini</u>

Ms. Cambrelen alleges an excessive force claim on behalf of Justice Santini, the two-year-old passenger.  The question of whether excessive force was used against Justice Santini turns on whether Justice Santini was "seized" under the Fourth Amendment.

"A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement. A seizure occurs even when an unintended person is the object of detention, so long as the means of detention are intentionally applied to that person." <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 269 (3d Cir. 2000) (citing <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 596 (1989)).  "If a police officer fires his gun at a fleeing robbery suspect and the bullet inadvertently strikes an innocent bystander, there has been no Fourth Amendment seizure." <u>Id.</u>  If, however, "the officer fires his gun directly at the innocent bystander in the mistaken belief that the bystander is the robber, then a Fourth Amendment seizure has occurred." <u>Id.</u>

Justice Santini was not an innocent bystander inadvertently struck.  He was not mistakenly believed to be the felon.  Rather, he was a two-year old passenger of a car that the suspected felon was driving.  The question is whether the police seize passengers in a car when they seize the felon.  <u>Compare</u> <u>Childress v. City of Arapaho</u>, 210 F.3d 1154, 1156-57 (10th Cir. 2000) (finding mother and child hostages injured when police shot at van were not seized because the police "made every effort to deliver them from unlawful

abduction" and "[t]he injuries inflicted were the unfortunate but not unconstitutional 'accidental effects of otherwise lawful conduct'"); Mederios v. O'Connell, 150 F.3d 164, 169 (2d Cir. 1998) (finding hostage shot in crossfire by state trooper had not been seized reasoning, in part, that the troopers were attempting to deliver the hostages from peril, not restrain their movements); Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1167 (11th Cir. 2005) (finding when police shot the driver "it did not constitute a seizure of the passengers" and noting plaintiffs "do not allege [the officers] had the intent to cause harm unrelated to the arrest"); Landol-Rivera v. Cosme, 906 F.2d 791, 795 (1st Cir. 1990) ("A police officer's deliberate decision to shoot at a car containing a robber and a hostage for the purpose of stopping the robber's flight does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern."), with Fisher v. City of Memphis, 234 F.3d 312, 318-19 (6th Cir. 2000) (reasoning the passenger of a car was seized when police shot the driver because "[b]y shooting at the driver of the moving car, he intended to stop the car, effectively seizing everyone inside"); Edenfield v. The Estate of Arnold Willets, 2006 WL 1041724, at *10 (D. Haw. Apr. 14, 2006) (whether plaintiffs "were seized by the [o]fficers turns on whether the [o]fficers intended to direct their physical restraint at [p]laintiffs and/or the truck").

Defendants rely on Rucker v. Hartford County, Md., 946 F.2d 278 (4th Cir. 1991), arguing Justice Santini was not Deputy Ogden's intended target, and, therefore, could not be seized pursuant to the Fourth Amendment. In Rucker, the United States Court of

Appeals for the Fourth Circuit found a bystander was not seized under the Fourth Amendment when an officer accidentally shot him while attempting to shoot a fleeing suspect. 946 F.2d at 281-82. The Rucker court reasoned the police officers were "apprehending a madman run amok, threatening the lives of everyone in his way." Id. at 281. The bystander had been warned to leave the area, and the only evidence that the deceased was visible was from a witness who had a different vantage point than the shooting officer. Rucker, 946 F.2d at 281-82.

Deputy Ogden did not seize Justice Santini. In situations in which the plaintiff is a passenger, not a suspect, most courts have found no seizure occurred because the police did not intend to seize the passenger and the passenger's injuries were an unfortunate accident. See Childress, 210 F.3d at 1156-57; Mederios, 150 F.3d at 169; Troupe, 419 F.3d at 1167; Landol-Rivera, 906 F.2d at 795; Rucker, 946 F.2d at 281-82; but see Fisher, 234 F.3d at 318-19; Edenfield, 2006 WL 1041724, at *10. It is irrelevant whether Deputy Ogden knew Justice Santini was in the car. Deputy Ogden was attempting to arrest Jorge Santini and stop the car. As in Rucker, because Justice Santini was not the intended target of the seizure, he could not be seized under the Fourth Amendment. I will grant defendants' summary judgment motion as to Justice Santini's Fourth Amendment claim.[4]

---

[4] Count III of Ms. Cambrelen's complaint alleges a "Fourteenth Amendment Substantive Due Process Violation." In the response to the summary judgment motion, the plaintiffs sole mention of the Fourteenth Amendment is to state that the Fourth Amendment applies to the states through the Fourteenth Amendment. The defendants' sole mention of a free-standing due process claim alleges such a claim is subsumed by the Fourth Amendment claim.

B.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S.Ct. 808, 815 (U.S. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.  Courts should "resolv[e] immunity questions at the earliest possible stage in litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

To determine whether to apply qualified immunity courts consider (1) whether, "[t]aken in the light most favorable to the [plaintiff], do the facts alleged show the officer's conduct violated a constitutional right," and (2) whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by Pearson, 129 S.Ct. at 818, which held the sequence of the qualified immunity inquiries was not mandatory).

Whether an officer's conduct violates clearly established law "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were

---

If Count III attempted to raise a free-standing Fourteenth Amendment violation, it also fails.  For executive action to violate the Fourteenth Amendment, the abuse of power must "shock[] the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Deputy Ogden's conduct does not rise the level of "conscience shocking."

clearly established at the time it was taken.'" <u>Pearson</u>, 129 S.Ct. at 822 (quoting <u>Wilson</u>

<u>v. Layne</u>, 526 U.S. 603, 614 (1999)).  In an excessive force case, "the issue is not whether

the use of force was excessive under the circumstances, but rather, whether 'the right the

official is alleged to have violated [was] clearly established in a more particularized, and

hence more relevant, sense:  The contours of the right must be sufficiently clear that a

reasonable officer would understand that what he was doing violates that right.'" <u>Wade</u>

<u>v. Colaner</u>, 2010 WL 1490590, at *9 (D.N.J. Apr. 13, 2010) (quoting <u>Saucier</u>, 533 U.S. at

201-02).  The relevant inquiry is "whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.

A question of fact remains as to whether a reasonable officer, confronted with the

situation Deputy Ogden confronted, would have viewed his conduct as unlawful.  I will

deny defendants' summary judgment motion based on the assertion of qualified

immunity.


C.    <u>Monell Claims</u>

Ms. Pagan and Ms. Cambrelen assert <u>Monell</u> claims against the County of Berks

and Sheriff Jozwiak.  A municipality can be liable pursuant to § 1983 only "when

execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the

injury."  <u>Russoli v. Salisbury Twp.</u>, 126 F. Supp. 2d 821, 860 (E.D. Pa. 2000) (quoting

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). To establish a Monell claim, the plaintiff must establish the "municipal policy or custom . . . amounts to deliberate indifference to the rights of people with whom the police come into contact." Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "This typically requires proof of a pattern of underlying constitutional violations." Id. (citing Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2003)). "[P]roving deliberate indifference in the absence of such a pattern is a difficult task." Carswell, 381 F.3d at 244 (citing Berg, 219 F.3d at 276). "[A] plaintiff must also demonstrate that the inadequate training caused a constitutional violation." Id. "There must be 'a direct casual link between a municipal policy or custom and the alleged constitutional deprivation.'" Id. (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001)).

The plaintiffs base their Monell claims on the expert report of John G. Peters, Jr. Ph.D. Dr. Peters notes that the County of Berks did not have a written policy regarding execution of body warrants and contends it failed to train sheriffs and officers in the execution of body warrants. See Plaintiff's Response at Exh. A at 4-5. The expert noted the deputies had received training in search warrant execution, but found the execution of search warrants and body warrants required different techniques and training. Id. Dr. Peters also contends that Deputy Ogden's use of force was objectively unreasonable and

violated the Berks County Sheriff Department firearms policy,[5] national use of force

standards, and the totality of the circumstances. Id. at 6-8. He lists alternatives available

to Deputy Ogden, including releasing the wiper blade and arresting Mr. Santini before he

entered his vehicle. Id. at 9-13. The expert states it was unreasonable for the deputies to

not have a plan for the execution of the warrant. Id. In addition, he claims the sheriff

failed to properly investigate the incident. Id. at 14.

Defendants maintain they are not liable because the County had "an extensive

firearms policy,"[6] all sheriffs employed by the County were certified deputy sheriffs

under Pennsylvania law, and all deputies had graduated from an Act 120 approved police

academy. See Defendants Memorandum at Exh. J; Defendant's Memorandum at Exh. I at

67-69. In addition, the sheriffs were trained police officers, received the required training

under Pennsylvania law, and were required to be certified to carry a firearm.

See Defendant's Memorandum at Exh. E at 44-46, Exh. B at 129-30. Deputy Ogden and

Deputy Trotter also had attended basic warrant service school and special weapons and

tactics training. Id. Defendants note there had been no prior similar complaints.

Plaintiffs' expert report raises some questions about whether the deputies received

adequate training in regards to body warrants, rather than search warrants, and whether

---

[5] The expert also opines that the firearm policy was confusing.

[6] Memorandum in Support of the Motion for Summary Judgment Pursuant to Fed. R.C.P.
56 of Defendants Berks Count, Barry Jozwiak and Aaron Ogden at Exh. J, Pagan v. Ogden, No.
09-00002 (E.D. Pa. filed Jan. 18. 2010).

16

the firearm policy was adequate and comprehensible.  This, however, is not sufficient to establish the city was deliberately indifferent and that their "deliberate indifference" caused the constitutional deprivation.  The deputies were trained pursuant to Pennsylvania law and plaintiffs have not established the county received prior complaints.

There is absolutely no showing of a pattern of constitutional violations or of any policy marked by indifference to the rights of people.  Nor is there even a suggestion that any such pattern or policy is the cause of any violation of the plaintiffs, or the plaintiff's decedent's, constitutional rights.  What we have here is a trained officer's response to dangerous, erratic conduct by a fugitive criminal who was thought, and reasonably so, to be armed.

No reasonable jury could find a direct causal link between any purported municipal policy and a constitutional depravation.  I will grant defendants' summary judgment motion as to the municipal liability claim.


D.    Punitive Damages

Punitive damages may not be awarded against municipalities under § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Similarly, punitive damages may not be awarded against an officer in his or her official capacity.  Gretory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988).  Punitive damages may be awarded against an officer in his or her individual capacity.  Smith v. Wade, 461 U.S. 30, 56 (1983).

For a § 1983 plaintiff to receive a punitive damages award "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by an evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).

Officer Ogden's conduct does not appear "intentional or motivated by an evil motive," but it is conceivable that a jury could find his conduct reckless. I will deny defendants' motion for summary judgment as to Ms. Pagan's request for punitive damages.

Because summary judgment will be granted in favor of the defendants for all claims raised by Ms. Cambrelen on behalf of Justice Santini, summary judgment will be granted in favor of the defendants as to Ms. Cambrelen's request for punitive damages.

E.    State Law Claims

1.    Immunity Pursuant to Pennsylvania Political Subdivision Tort Claims Act

Ms. Pagan raises a negligence claim against Deputy Ogden on behalf of Mr. Santini. Defendants maintain Deputy Ogden has immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act.

The Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 et seq., provides "no local agency shall be liable for any damages on account of any injury

to a person or property caused by any act of the local agency or an employee thereof or any other person."  There are eight exceptions to this grant of immunity.  <u>See</u> 42 Pa. C.S.A. § 8542(b).  This immunity applies to local agencies and their employees.  <u>See</u> <u>Phillips ex rel. Phillips v. Washington Cnty. Transp. Auth.</u>, 986 A.2d 925, 933 (Pa. Cmwlth. Ct. 2009) ("The Tort Claims Act grants employees immunity from suit for their official acts and [plaintiff] must first prove that the employee's conduct falls within one of the eight exceptions to immunity.").

Ms. Pagan maintains the immunity does not apply because Deputy Ogden's conduct falls into the exception captioned "[c]are, custody or control of personal property."[7]  The plaintiffs cite 42 Pa. C.S.A. § 8522(b)(3),[8] which provides an exception to sovereign immunity.  The defendants, however, do not claim sovereign immunity. Rather, they claim immunity from tort actions for local government agencies.

The personal property exception for the local agency immunity provides a local agency's (or its employees') acts "may result in the imposition of liability on a local

---

[7]  Memorandum of Law in Opposition to the Motion for Summary Judgment Filed by the Defendants Pursuant to Federal Rule of Law 56 at 16, <u>Pagan v. Ogden</u>, No. 09-00002 (E.D. Pa. filed Feb. 2, 2010) [hereinafter Plaintiff's Memorandum].

[8]  42 Pa. C.S.A. §8522(b)(3) provides: "The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by: . . . The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials."

agency" where an injury is caused by the negligent act of an employee and involves "[t]he care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency." 42 Pa. C.S.A. § 8542(b)(2).

Because the gun and ammunition used by Deputy Ogden were not the "personal property of others," Deputy Ogden cannot be held liable for tort actions resulting from their use. See Jacoby v. Pollock, 12 Pa. D. & C. 4th 336, 338 (Ct. Com. Pl. of Pa. May 16, 1991) (noting the plaintiff's claim that the gym teacher and Township school district were liable for substandard supervision when the plaintiff used the school's springboard did not fall within the personal property exception because "[i]t is apparent that the springboard, clearly owned by the school district, is not the personal property of others.'"). In addition, the damages claimed by Ms. Pagan are not property loss damages. See Kearney v. City of Philadelphia, 616 A.2d 72, 75 (Pa. Commw. Ct. 1992) (where plaintiff alleged emotional distress claims, the court found "regardless of whether this Court recognizes that the body of the decedent was [the plaintiff's] personal property, her claim would still fail to qualify as a cause of action under Section 8542(b) since she is alleging that the City's actions caused personal injuries rather than property loss").

I find immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act applies and will grant summary judgment in favor of defendants on Ms. Pagan's

negligence claim against Deputy Ogden.


### 2. Reckless Disregard

Plaintiffs' complaints raise claims entitled "state pendent claim–reckless disregard" against Deputy Ogden. Complaint at ¶¶ 83-84. The complaint alleges Deputy Ogden's conduct "constituted a reckless disregard for the rights and safety of the Plaintiff's decedent." Id. at ¶ 84. In their response to the motion for summary judgment, plaintiffs allege the "reckless disregard" claims are independent actions pursuant to § 1983. See Plaintiff's Memorandum at 17.

I will dismiss the plaintiffs' reckless disregard claims. No independent cause of action for reckless disregard exists under state law or under § 1983.[9]


### 3. Assault and Battery[10]

Ms. Cambrelen alleges causes of action for assault and battery against Officer Ogden on behalf of Justice Santini. Ms. Pagan did not raise assault and battery claims on behalf of the estate of Jorge Santini.

---

[9] 42 U.S.C. § 1983 applies to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Although whether conduct is in "reckless disregard" of a person's rights is a standard applied to determine whether some federal constitutional rights have been violated, "reckless disregard" is not an independent cause of action under § 1983.

[10] The immunity provided by the Torts Claim Act does not apply to Ms. Cambrelen's assault claim, battery claim, and intentional infliction of emotional distress claim because, if proved, the conduct would be willful misconduct. See 42 Pa. C.S.A. § 8550.

To establish an assault occurred, the plaintiff must prove "the defendant act[ed] with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experienced such apprehension." Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009) (citing Heverly v. Simcox, 2006 WL 2927262, at *9 (M.D.Pa. Oct. 11, 2006)). "Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." Id. (citing Fulks ex rel. Daniel v. Gasper, 439 F.Supp.2d 372, 379 (M.D.Pa.2006)). Although "[p]olice officers are privileged to commit these torts using a reasonable amount of force when effectuating an arrest[,] [u]se of unreasonable or excessive force dissolves the privilege." Id. (internal citations omitted). A jury can find a police officer liable for assault and battery where it determines "the force used in making an arrest is unnecessary or excessive." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

Ms. Cambrelen presents evidence Deputy Ogden pointed a gun into the car and a question of fact remains as to whether Deputy Ogden knew Justice Santini was in the car. Ms. Cambrelen claims a jury may be able to find Deputy Ogden knew Justice was in the car, and intended to place him in fear when he pointed a gun at, shot, and killed Jorge Santini. In attempting to state a battery claim Ms. Cambrelen states the battery occurred because the car careened out of control after Jorge Santini was shot and because Justice Santini was physically removed from the car and his car seat while he was crying.

The key element here is "intent."  It is not enough for Ms. Cambrelen to assert that Deputy Ogden's actions were unreasonable or that the child possibly was placed in fear.  Ms. Cambrelen has a burden under Rule 56 to come forward with some evidence of intent to harm this child.  A reasonable jury could not find Deputy Ogden intended to place Justice Santini in fear and could not find Deputy Ogden intended harmful contact with Justice Santini.  I will grant defendants' summary judgment motion as to Ms. Cambrelen's assault and battery claims.

### 4.  <u>Intentional Infliction of Emotional Distress</u>

To establish an intentional infliction of emotional distress clam, the plaintiff must prove: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe.  <u>Dull</u>, 604 F. Supp. 2d at 755-56.

Courts are cautious "to declare conduct 'outrageous' so as to permit recovery."  <u>Project Mgmt. Inst., Inc. v. Ireland</u>, 2000 WL 375266, at *6 (E.D. Pa. Apr. 11, 2000) (citing <u>Clark</u>, 890 F.2d at 623).  Usually "it is insufficient 'that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle plaintiff to punitive damages for another tort."  <u>Id.</u>, at *6

(citing Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)). The defendant's misconduct must be "so extreme and outrageous that it 'go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society.'" Dull, 604 F. Supp. 2d at 755-56 (quoting Wilkes v. State Farm Ins. Co., 2005 WL 1667396, at *4 (M.D. Pa July 15, 2005)); Hoy, 720 A.2d at 754 (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (1987)).

"[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993)). Conduct which has been found sufficiently outrageous includes: "(1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." See Dull, 604 F. Supp. 2d at 756 (citing Hoy, 720 A.2d at 754).

Even if Deputy Ogden acted recklessly when discharging his firearm, Ms. Cambrelen fails to establish Deputy Ogden intended to cause severe emotional distress to Justice Santini. The incident happened quickly, with little anticipation of what would happen next. The deputy was responding to the dangerous actions of a known criminal. There was nothing deliberate about Deputy Ogden's actions. He was struck by Mr.

Santini's car, was on the windshield, and reacted quickly to free himself. Deputy Ogden's actions do not constitute extreme and outrageous conduct. I will grant summary judgment on Justice Santini's intentional infliction of emotional distress claim.

5.     Wrongful Death and Survival Action

Ms. Pagan asserts a wrongful death claim and survival action[11] against Sheriff Jozwiak and the County of Berks. Defendants maintain these actions cannot be sustained. Ms. Pagan did not respond.

The County of Berks is immune pursuant to 42 Pa. C.S.A. § 8541, which provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Although there are exceptions to this immunity, the personal property exception relied on by plaintiffs does not apply.

Similarly, Sheriff Jozwiak is immune pursuant to 42 Pa. C.S.A. § 8545, which provides: "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."

---

[11] Pennsylvania Wrongful Death Statute and the survival action are not substantive causes of action. The statutes provide a statutory mechanism to assert claims and recover damages on behalf of a deceased. See Sonnier v. Field, 2007 WL 576655, at *6 (W.D. Pa. 2007) (citing 42 Pa. C.S.A. §§ 8301, 8302).

I will grant summary judgment for defendants County of Berks and Sheriff

Jozwiak for the wrongful death and survival action claims.[12]


IV.    CONCLUSION

I will grant defendants' summary judgment motion as to Ms. Cambrelen's Fourth

Amendment and Fourteenth Amendment claims; Ms. Pagan and Ms. Cambrelen's Monell

claims and reckless disregard claims; Ms. Cambrelen's request for punitive damages; Ms.

Pagan's negligence claim; Ms. Cambrelen's assault and battery claims; Ms. Cambrelen's

intentional infliction of emotional distress claim; and Ms. Pagan's wrongful death and

survival action claims against Sheriff Jozwiak and the County of Berks.  I will deny the

summary judgment motion as to Ms. Pagan's Fourth Amendment claim, Ms. Pagan's

punitive damages claim, and defendants' request for qualified immunity.

An appropriate order follows.

---

[12]   The defendants' summary judgment motion does not address the wrongful death and
survival action claims against Deputy Ogden.